UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELAINE P.,

           Plaintiff,

    v.                                          **DECISION AND ORDER**

                                                                  20-CV-714S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.
_____

        1.      Plaintiff Elaine P.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.      Plaintiff protectively filed her application with the Social Security Administration on August 22, 2017. Plaintiff initially alleged disability beginning January 16, 2017, later amended to November 28, 2015, due to degenerative disc disease, arthritis, and (after January 1, 2019) carpal tunnel syndrome. The ALJ found that Plaintiff was not disabled from January 16, 2017, or from November 28, 2019 (R.[2] at 40). Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

3.     On July 3, 2019, ALJ Hortensia Haaversen held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Quintin Boston appeared and testified. (R. at 29, 47-80.) Plaintiff was born in 1955 and was over sixty years old as of the amended onset date (R. at 81, 82; Docket No. 13, Pl. Memo. at 2, 24). She has a high school education (R. at 198). Plaintiff worked as a security officer from 1983 to 2015, but she was not engaged in substantial gainful activity since November 28, 2015 (R. at 31), the amended onset date.

4.     The ALJ considered the case *de novo* and, on August 21, 2019, issued a written decision denying Plaintiff's application for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 13, 16.) Plaintiff filed a response on July 1, 2021 (Docket No. 17), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is granted, and Defendant's Motion is denied.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to

---

[3]The ALJ's August 21, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

"more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

        9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

        10.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C.

4

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since November 28, 2015. (R. at 31.) At step two, the ALJ found that Plaintiff has the following severe impairment: degenerative disc disease, arthritis, and, after January 1, 2019, carpal tunnel syndrome. Id. at 31. Plaintiff also claimed she suffered from depression and anxiety, but the ALJ deemed these conditions to be nonsevere, id. at 32. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12. Next, the ALJ found that, to January 1, 2019, Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except Plaintiff can lift and carry 50 pounds occasionally, 25 pounds frequently; sit, stand, and walk for 6 hours each in an 8-hour workday; and must avoid concentrated exposure to extreme cold, heat, humidity, wetness, odors, fumes, dust, gases, and poor ventilation. From January 1, 2019, the ALJ found that Plaintiff still could perform medium work but was further limited to frequent handling and fingering. (R. at 34.) This Court notes that the RFC made no express findings as to mental limitations.

13. At step four, the ALJ found Plaintiff can perform her past relevant work as a security officer. (R. at 40.) The vocational expert supports that finding both before and after January 1, 2019. (R. at 40.) As a result, the ALJ found that Plaintiff was not disabled from the amended onset date of November 28, 2015. (R. at 40.)

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because the finding that she could perform medium work (or her former position) was unsupported. Since Plaintiff was 60 years old on the amended onset date, with her twelfth-grade education and skills (R. at 81-82, 198), she contends that if she were unable to perform her past work as a security officer, she would be limited to performing light exertion work. Under the relevant Medical-Vocational Grid Rule 202.06 for her age, education, skills, and proper RFC, Plaintiff believes she would be deemed disabled under the Rules (Docket No. 13, Pl. Memo. at 24). For the reasons that follow, this Court agrees with Plaintiff that the ALJ erred in considering her mental impairments in finding the RFC, warranting remand. This Court, however, does not conclude what her proper RFC should be.

15.     Plaintiff argues that the ALJ erred in rendering the RFC without any statement of her mental limitations (Docket No. 13, Pl. Memo. at 28-30).

16.     Plaintiff claimed depression and anxiety. At step two, the ALJ found those conditions were not severe (R. at 32).

17.     Plaintiff now argues the ALJ failed to incorporate mental limitations in the RFC (Docket No. 13, Pl. Memo. at 28), see MacDonald v. Comm'r of Soc. Sec., No. 17CV921, 2019 WL 3067275, at *3-4 (W.D.N.Y. July 11, 2019) (Vilardo, J.) (remanding when ALJ failed to incorporate mild limitations for claimant's major depressive disorder in the resulting RFC).

18.     Defendant retorts that Plaintiff did not show that her mental impairments were severe to require further analysis beyond step two (Docket No. 16, Def. Memo. at

20), contending that the ALJ found that her mental impairments no way affected her ability to work (id.; see R. at 31-34).

19. At step two, the ALJ did find that Plaintiff had no limitations in the functional areas of understanding, remembering, or applying information or adapting or managing herself; and mild limitations in the areas of interacting with others and concentrating, persisting, or maintaining pace (R. at 33). The ALJ noted this step two finding was not a residual functional capacity assessment and the later step assessment for mental RFC "require[d] a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listings of Impairments" (id.).

20. As observed by Judge Vilardo,

> "'[S]tep two of the Commissioner's five-step analysis ... requires the ALJ to determine whether [a] mental impairment is "severe" or "not severe."' Wells v. Colvin, 727 F.3d 1061, 1064 (10th Cir. 2013) (quoting 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d)). 'But the regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are "not severe," he must further consider and discuss them as part of his [RFC] analysis at step four.' Id. Specifically, the ALJ 'must consider the combined effect of all the claimant's medically determinable impairments, whether severe or not severe.' Id. at 1065 (emphasis in original)."

Collins v. Comm'r of Soc. Sec., No. 19cv1350, 2020 WL 6488744, at *5 (W.D.N.Y. Nov. 4, 2020) (Vilardo, J.).

21. As Plaintiff argues (Docket No. 13, Pl. Memo. at 30), it is unclear whether the ALJ considered Plaintiff's mental impairments after step two. As in Collins, supra, 2020 WL 6488744, at *6, the RFC (R. at 34) only included physical limitations and did not include the mild limitations found at step two for her mental limitations (R. at 34-40). The ALJ in the later steps did not apply Plaintiff's nonsevere mental impairments to determine

7

her ability to perform her past relevant work, despite discussing (and then discounting) her mental limitations at step two (R. at 33-34).

22.     The ALJ did not perform the requisite detailed assessment of Plaintiff's mental limitations after step two.  There was no consideration of the combined effects of Plaintiff's mental impairment (whether severe or not) with her physical conditions.

23.     The ALJ's only arguable discussion of her mental condition after step two was the conclusion that comparing the RFC with "the physical and mental demands" of her past work as a security officer, the ALJ found that Plaintiff could perform her former work (R. at 40).  The ALJ made this conclusion with no analysis of her mental condition.

24.     The ALJ also rejected an unspecified opinion of Dr. Kevin Cleary that Plaintiff was totally disabled due to anxiety (R. at 38; cf. R. at 459 (Jan. 23, 2018, opinion)).  There, the ALJ concluded that the opinion lacked "any particularly significant findings in his own records and the contrast with psychiatrist Dr. Bennett's own findings and GAF score opinion near in time" (R. at 38; see Docket No. 13, Pl. Memo. at 30).  The ALJ then discounted Dr. Cleary's opinion because it was based only upon Plaintiff's subjective complaints (R. at 38).  The ALJ also found that Dr. Cleary's opinion was inconsistent with the clinical record (R. at 38).  It is unclear whether the ALJ was referring to Plaintiff's mental impairment since the ALJ also discussed the physical condition evidence as well, with the anxiety discussion as an aside to the rest of physical condition discussion.  Otherwise, the ALJ did not cite the mental health evidence of record after the step two analysis.

25.     Defendant's response, including the ALJ's step two analysis (Docket No. 16, Def. Memo. at 20-22), provides a post hoc rationalization of Plaintiff's mental

health evidence to support the defense contention that Plaintiff failed to prove that her mental limitations were severe enough to be an impairment under the Listings.  This response did not address the failure to consider these nonsevere mental limitations in conjunction with Plaintiff's severe physical impairments at step four or beyond.

26.	"A reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.' Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)," Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).

27.	The ALJ also did not determine if her mild limitations with interacting with others due to her depression and anxiety (see R. at 33) impacted her ability to perform as a security officer (or other work).  The ALJ's focus was exclusively on Plaintiff's physical ability to perform that work with little regard to her mental impairments.

28.	Even if substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were not severe, remand is required, Collins, supra, 2020 WL 648874, at *6; see MacDonald, supra, 2019 WL 3067275, at *4 (conclusory statement in RFC of non-severe mental impairment not sufficient where RFC did not mention mental limitations).

29.	Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) on her mental limitations is granted.

30.	Plaintiff next claims the finding that she physically could perform a reduced range of medium exertion work is not supported by any medical opinion (Docket No. 13, Pl. Memo. at 19).

31.  Dr. Samuel Balderman conducted a consultative examination of Plaintiff in November 2017 and found that Plaintiff had moderate limitations in frequent changes in position of her head (R. at 407-10, 409; Docket No. 13, Pl. Memo. at 7).  The ALJ, however, found this opinion (and the opinions of state agency doctor, Dr. Gary Ehlert (R. at 89-91; Docket No. 16, Def. Memo. at 7), and treating physician, Dr. Cleary (R. at 345, 347, 458-59, 594; Docket No. 13, Pl. Memo. at 4, 8, 10; Docket No. 16, Def. Memo. at 6)), were not persuasive and inconsistent with the subsequent record (R. at 37, 38; Docket No. 13, Pl. Memo. at 19).

32.  The ALJ also discounted Dr. Cleary's January 2018 opinion (finding that Plaintiff's herniated discs of the cervical spine led to her application for disability, R. at 459-60) because it was inconsistent with the doctor's own records (R. at 38).  The ALJ instead relied upon Dr. Cleary's May and June 2018 opinions (R. at 38, 593, 598).

33.  Defendant finds support for the RFC of medium exertion, based upon Plaintiff having undergone little evaluation and treatment for her claimed impairments, diagnostic imaging of the spine not showing significant neural involvement, clinical findings upon examinations of the lumbar spine were not particularly remarkable, as were imaging and examinations of Plaintiff's joints (Docket No. 16, Def. Memo. at 13-14; R. at 35, 39).

34.  Plaintiff also argues that the ALJ's finding limitations due to carpel tunnel syndrome in her ability to handle and finger only began as of January 1, 2019, was not supported by the record of her examinations prior to that date and her hearing testimony (id. at 20-24; Docket No. 17, Pl. Reply Memo. at 2-9).

35. On this carpel tunnel claim, Defendant contends that the medical record in evidence supports denying limitation entirely but the ALJ could view the post-January 2019 evidence in her favor to restrict frequent fingering and handling (Docket No. 16, Def. Memo. at 18).

36. Plaintiff then faults the ALJ for mischaracterizing medical evidence to conclude that she was uncooperative (Docket No. 13, Pl. Memo. at 25-28; see Docket No. 17, Pl. Reply Memo. at 9-10). Defendant counters that Plaintiff differs with the ALJ's weighing of the evidence and her present call "is tantamount to an invitation for this Court to reweigh the evidence, which is beyond the scope of the deferential substantial evidence standard" (Docket No. 16, Def. Memo. at 29, citing Biestek v. Berryhill, 587 U.S. ___, 139 S.Ct. 1148, 1154, 203 L.Ed.2d 504 (2019) (defining "substantial evidence" in Social Security appeals); Krull v. Colvin, 669 F. App'x 31, 32 (2d Cir. 2016) (summary Order) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.")).

37. There are two problems with Plaintiff's objections to the ALJ's consideration of her physical impairments.

38. First, Plaintiff filed her application after the Social Security Administration amended its regulations on the interpretation of medical evidence. Revisions to Rule Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017), 2017 WL 168819, as amended, 82 Fed. Reg. 15,132 (Mar. 27, 2017), effective March 27, 2017, abolishes the treating source (or physician) rule and eliminates according evidentiary weight to medical opinions, 20 C.F.R. § 404.1520c(a). Now the agency considers the persuasiveness of a medical opinion using several factors specified in the

rules, 20 C.F.R. § 404.1520c, the most important of which are the supportability (20 C.F.R. § 404.1520c(c)(1)) and consistency of the medical evidence (20 C.F.R. § 404.1520c(c)(2), (b)(2)).

39. The ALJ here applied the new standard in assessing the supportability and consistency of the medical evidence for Plaintiff's physical impairments (R. at 34, 35, 37, 38, 39).

40. Second, despite Plaintiff's disagreements with how the evidence was weighed, this Court must defer to the ALJ's weighing of evidence, Krull, supra, 669 F. App'x at 32 (Docket No. 16, Def. Memo. at 29.

41. Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) on her physical limitations is denied. But remand is warranted for consideration of her mental limitations with her physical limitations; the Motion is granted on that basis.

42. This case is remanded for the ALJ to consider Plaintiff's nonsevere mental limitations and whether she could perform her past relevant work. While the physical impairment findings in the RFC need not be reconsidered on remand, the interaction of all her impairments (physical and mental, severe and nonsevere) needed to form the proper RFC and determine at a minimum whether she can perform her past relevant work.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      January 4, 2022
            Buffalo, New York

                                           s/William M. Skretny
                                           WILLIAM M. SKRETNY
                                           United States District Judge